The case is Aptalis Pharmatech v. VA v. Apotex, Inc. Mr. Zimmerman. And you're reserving three minutes of time for rebuttal, correct? Yes, Your Honor. Okay, you may proceed. May it please the Court. I'd like to address two main issues on the appeal, and first I'd like to talk about the district court's treatment of the prosecution history distinguishing the monolithic structure of the 177 Colombo patent. Then I'd like to shift gears and talk about the district court's treatment of the surrounding, the active core limitation which relates to surrounding or continuity. Before you do that, I'd like to do housekeeping. Okay, Your Honor. Whenever anybody says somebody else is lying, I like to give them a chance to say, no, I'm not. Aptalis says in the red brief at 41 and 42 that Apotex resorts to mischaracterizing the record by stating that Apotex proposed the construction only when the district court required it and that, quote, Apotex's construction was fashioned for purposes of avoiding infringement and not to define the term the correct way. I want you to discuss that statement that you've mischaracterized the record. Your Honor, the construction proposed by Apotex was in no way structured to infringement. It is the correct construction in view of the intrinsic evidence and the extrinsic evidence. Now, did Apotex design its product specifically to avoid infringement under the correct construction? Yes. So we adopted the construction that is correct on the intrinsic record and that construction necessarily leads to a finding of non-infringement. But it's not an after-the-fact litigation construction. And we can go through the prosecution history and we'll demonstrate that. It's not an accident that Apotex's mini tablets don't have a coating. Everybody agreed. The district court, counsel for Aptalus, Apotex, the experts, the mini tablets are uncoated. There is nothing on the outside of the tablet. So the ordinary meaning of extended release coating would require a coating, and the tablets were designed specifically not to have such a coating. Can I ask you, what is, to one of ordinary skill in the art in this technology, what's a coating? I mean, this seems to be very important because the plain claim language says, a coating surrounding said core. And so it seems like the key issues are whether this coating has holes and what does surrounding mean. Does it encompass all enclosures or are there some holes? Okay. So the ordinary meaning of coating would be some type of layer on the external surface of a tablet that provides for extended release. And Dr. Klibanoff said that. But here it's not just any extended release coating. It's an extended release coating comprising a water-insoluble polymer membrane. So we look to the intrinsic evidence as to what that means. Dr. McGinnity, in his declaration, it's on pages 1140 and 1141 of the joint appendix, during prosecution of the related 882 application, discussed the extended release membrane coatings we're talking about here. And he said there are two ways to make them. You either add a plasticizer to the polymer, and then it coalesces to form a continuous film around this core, or you spray it on without a plasticizer. And then when the solvent dries, you get a continuous coating around this core. What is the best part of the specification to support your argument that it's continuous? I mean, I think, and correct me if I'm wrong, but I think that every embodiment describes a continuous coating. But, you know, our case law says that we're not supposed to read the embodiments into the claim. So what do you think is the best part of the specification to support the continuous ID concept? Okay, so you have the prosecution history where the declarant said it's a continuous coating. But in column, I believe it's three of the patents. I'm sorry, it's column two. And you look at lines 27 through 31. This is the background of the invention section. It's discussing a prior art reference to Rourke. And it says there that the polymer is applied between 5% and 75% of the core surface. So when the inventor wanted to claim something less than a continuous core, a continuous coating, they told you. They said right here, 5% to 75% of the surface is covered. Everywhere where they talk about the embodiments of the invention, they talk about a complete covering or a continuous covering, and that's consistent with the prosecution history. And so we believe that the coating has to be continuous. And then if you look at the district court's opinion, the district court said the ordinary meaning of surround is to enclose on all sides. So the plain language of the claim requires that the coating surround the core. Was that the ordinary meaning or one definition from the Webster's Dictionary? It was the definition from the Webster's Dictionary that the district court chose to put in her opinion. And so we agree with that meaning. It's consistent with surrounding meaning continuous. It's consistent with the prosecution history and the McGinnity Declaration that plaintiffs submitted during prosecution. There's no evidence in the intrinsic record that suggests anything less than a continuous coating that fully surrounds. Some of this prior art, I looked at a lot of the prior art in columns one and two to try to understand, as you point out, that the word surrounds. Sometimes there's apertures. Sometimes it's described, the 838 patent you just noted, it just says there's coating and then there's apertures, suggesting that the inventor knows how to say that. But the patent above talks about, the one described above, that's the 738 patent to Rourke. That one talks about having a plasticizer which surrounds and adheres to the core. But when you look at the patent, there is one embodiment there that is described as having apertures that are drilled into the coating. So how do we deal with that kind of inconsistency in the description of the prior art? Well, when you look at this one, when they meant something less than totally surrounding, they specifically told you. They said it covers 5 to 75%. Most of the embodiments on the one you're referring to are completely surrounded, which is the typical way you make these coatings. And then when you go to the McGinnity Declaration on pages 1140 and 1141, and this was submitted during prosecution by Aptalis, he's talking about the extended release coatings of the invention, and he says they're continuous. It's a continuous film, which would support going all the way around. But he also says it's permeable. It has to be that water can get in and water can get out, but that doesn't mean there's a hole in it. It means that it's permeable. If there was a hole in it, would the invention work for its intended purpose? It depends what particular type of coating you use. You can apply certain hard coatings where you would put holes in by design because it's not a permeable coating, but that's not the case with the type of water-insoluble polymer membranes we're talking about here. And all of the technical documents that discuss membranes describe them as encircling a cork. And tellingly, although the district court said surround means to enclose on all sides, she specifically rejected the idea of continuity. We view that as a claim construction error, and when it's correctly construed, you do need a continuous coating. And then in her infringement findings, she adopted Dr. Muzzio's testimony where he says the polymer covers a significant fraction. It's predominantly polymer. He admitted on Appendix 1893 that he made no effort to quantify how much of the cyclobenzaprine particles in Apotex's mini-tablets are covered. So there is no evidence to suggest a complete coating. How does the prosecution history help you here? The prosecution history helps in two ways. And show me the evidence that there was a clear and unmistakable disavow. We are not arguing a clear and unmistakable disavow here. We have never argued that to the district court. We're not arguing it here. The prosecution history helps in two ways. First, with respect to surrounding or continuous, I already pointed you to 1140, 1141. That's the McGinnity Declaration where he's talking about the extended release coatings, and he says that they're a continuous film. So we think that means surround has to go all the way around and be continuous. It helps in a second way, though, and that's at Joint Appendix 3325. During prosecution, the applicants distinguished their invention from a prior art patent to Columbo. Is this the parent prosecution history? Yes, this is during prosecution of the parent 793 patent. And at page 3325, the examiner rejected the claims over the Columbo 177 patent, and that teaches a matrix. There's no dispute that that teaches a matrix. And the applicants distinguished their extended release coated beads from a matrix, and they specifically said, granulates that are compressed in the tablet form are insufficient to anticipate or to render obvious. Each of the beads is individually coated with an extended release coating. The granulates of the 177 patent, by contrast, are compressed into a monolithic structure. And those were the words chosen by Aptalis. There was no dispute at trial that a monolithic structure is a matrix. And Apitex's tablets are formed by mixing the materials together, forming granulates, and then compressing them into tablets, exactly like Columbo. So whatever the extended release coating is in the context of this patent, the prosecution history shows it can't embrace a monolithic structure or a matrix like Apitex has. Now, the examiner didn't adopt that argument or didn't agree with it, but I guess it's your position that it still is helpful in understanding how the claim should be interpreted? It is helpful, and it's not a disclaimer, because I view disclaimer as when the ordinary meaning is broad enough to encompass something, and the applicant says, no, no, we don't want to include that. That's a disclaimer. When an applicant says, our invention is this, not this, they're making a distinction, but they're not disclaiming something that's otherwise covered. And here we have that situation. They're just telling you what the- It's definitional. It's definitional rather than a disclaimer of something that would otherwise be covered by the ordinary meaning. And it's not just our view that the prosecution is helpful. If you look at the district court's opinion at page 10 and 10, note 13, the district court originally didn't consider the prosecution history in reaching her claim construction, but after trial, when the prosecution history was presented through an expert, she then said that it informs the court's infringement analysis, and it informs the understanding of extended release codings. So clearly, even the district court thought it was worth considering. But then strikingly, she says, nowhere in the cited prosecution history were the terms membrane or matrix system used, not in the 177 patent or in the prosecution history. And then she dismisses the prosecution history. The fact that it doesn't use those words in high verba doesn't change the fact that they distinguish extended release codings from monolithic structures, which everybody agrees are matrices. So the district court never really conducted an analysis of what the prosecution history means. I see that I'm into my rebuttal time. If there are other questions. No other questions. We'll restore you to 30 minutes. Thank you, Your Honor. Mr. Lane. Good morning, Your Honors. John Lane from Fish and Richardson for the Appellees. On the claim construction, there were two points I wanted to make. I'm sure you'll have questions, too. We do. When I first read the claim construction, it sounded reasonable to me. But reviewing the claim construction order and the opinion, I couldn't find any intrinsic evidence supporting that a coding is a, quote, layer of any substance applied to another. In fact, it sort of looks like the district court obtained that definition from a dictionary that wasn't Pearl offered. It's certainly exactly the definition in Webster's third 1986, which defines coding as a layer of any substance used as a cover, protection, and so on. Do you know whether the district court got that definition somewhere other than intrinsic evidence? And if not, where is it? Well, here, importantly, which Apotex never says in its appeal brief, but below, and this is in the appendix of 1578, both parties agreed that the term extended release coding should have its plain and ordinary meaning. And both sides proposed constructions that they said were the plain and ordinary meanings. And by virtue of the fact, well, both parties also agreed there was no express definition in the specification of the prosecution history. So what I think the district court did, but I don't know for sure, but it appeared that the judge took words from the various proposed ordinary meanings from the parties and cobbled those together into a definition that was somewhere between the two parties' proposed ordinary meaning definitions. What is the ordinary meaning of coding in the context of pharmaceuticals? Why isn't it something that goes around a core, rather like a gobstopper? Well, I think fundamentally it is something that goes around a core, but I think the second part of your question, like a gobstopper, gets at this distinction between what Apotex calls a membrane system, which would be something like, I understand, a gobstopper would be, versus, for example, what they call a matrix system, where you have this dry coding formed by compacting very, very small polymer particles onto larger drug particles. But doesn't the claim say that it comprises a membrane, which I understand the parties interpreted as being a covering, but that doesn't necessarily mean that the claim doesn't have the word membrane in it. Well, if I may address one point first, it was undisputed that these types of dry codings that Apotex uses were known in the prior art. In fact, in column six, this exact type of the granulates that Apotex uses are described expressly in column six, line 23 to 33, as one embodiment of the invention. I guess the question is whether it's claimed, right? Right, so the claim includes the term membrane, but the parties agreed expressly that that term simply meant covering in the context of these patents. Would a person skilled in the art take the term membrane, as used in this industry, pharmaceuticals, and say that it's simply a coding? A coding or a covering? A covering, I'm sorry. A covering? Well, I think they would because that was what the parties agreed. And in cases in this court, many cases, for example, in the- I know what the parties agreed to. I'm just- and then the court reverted to what it was looking for a plain meaning in the words, but it just seems to me that the word membrane is used in the claims, and it was kind of like left behind somewhere. Right, but again, that was an agreed construction, so no one- Aptal's never had any reason to go beyond that, and no record was created about these questions you're asking. Well, I guess my- I understand that when we engage in claim construction, one of the first things we do is we look at the plain claim language, and that could be the words themselves that are being defined. But you also have to look at the other language surrounding those words that are being defined. Right. The words like surrounding a core and words like comprising a membrane. I don't think there might be other limitations to the claim as well, but those suggest something- something- what I visualize, but I'm- this is why I'm asking about what more than ordinary skill in the art would understand, but just looking at those terms, it sounds like it's a gobstopper, more of a gobstopper than, I don't know, a matrix formulation. I understand that, but here, Your Honor, the parties who are sophisticated about the technology agree that was not the case, and they- You're saying that they agreed that it's not a film surrounding a core, a drug core? No, they agreed that a membrane in the context of this patent was simply a covering. Why- and so you think the word covering is broader than membrane? I think so, and the district court also noted that during the claim construction. But we do review claim construction to know about, right? Yes, Your Honor, but claim constructions that are actually on appeal, that claim construction, water and solvent polymorphic membrane, is not on appeal. I understand, but I was just going to say, but again, why- tell me why I'm not supposed to look at the words that are surrounding the term that is on appeal, which is extended release coding. Why should I look at other words in the claim to try to understand what that means? Well, I think that's the law, that you should look at those other words in the claims. But here, Apotex's own proposed definition of extended release coding didn't draw that distinction, which the district court noted. Its own proposed construction, continuous outer film applied onto the surface of the active cores, doesn't expressly draw a distinction between matrix and membrane. So you've heard throughout these briefs about this distinction- But it does require continuous, and it does require outer, right? I mean, those are kind of the definitional words that differ in their construction from your proposed construction, right? Yes, exactly, but I would point out the word continuous is never used at all in the specification. Apertures aren't used in the specification either. Do you think the preferred embodiment in the specification includes an embodiment in which there's a coding that has apertures? In the general sense, I think all of these systems have to have some type of poor apertures, as our expert said in a claim construction declaration, in order for them to work. If the coding was absolutely continuous, the gastrointestinal fluids couldn't penetrate the coding and the drug couldn't go out, so they all have to have some type of holes. You would read the word continuous as meaning that something that surrounds the drug core but doesn't have holes that I can see, that that's not continuous because there's little tiny micropores in there? I think the plain meaning of continuous, and now we're getting into defining claim constructions, but our expert submitted a declaration during claim construction that said that in his understanding, the word continuous would not include these pores and cores. That wouldn't be the ordinary understanding of the word continuous. You argue in the red brief that the prosecution history is irrelevant. It's, and the district court said that it was never joined in discussing whether the claim language would exclude matrix systems. It was in evidence. Right, it was in evidence. So if it's in evidence, under Markman, shouldn't we consider it? I think two points. I think what the district court meant when it said join was my point earlier that Apotex never proposed a construction for extended release coding that got at that difference, and it agreed that a membrane was something else. It should just be defined broadly as a covering. And to your second point, if you look at the case aside in our brief about this disclaimer versus whether you can just look at the prosecution history generally, as Apotex is arguing, the cases we cited, Ecolab versus FMC, MIT versus Shire, those cases had very similar fact patterns to here where there was a disagreement with the examiner, and the specification suggested that the invention was broader. And in those cases, those are clearly disclaimer cases. The cases that Apotex cites in its brief, Nystrom... They're not arguing disclaimer. They're arguing, as I said in dialogue, definitional. Right, but what I'm trying to get at, and maybe I didn't make the point clearly, is that's not appropriate here. In cases like this, with this fact pattern with the examiner and the applicant disagreeing, and then that disagreement not being resolved and the applicant moving away from that argument and distinguishing the prior art on another basis, that's the fact pattern in Ecolab, that's the fact pattern in MIT. And in those cases, those were disclaimer cases. They were, but this is a... What about just whether it could relate to claim construction, not being dispositive of the claim construction, but maybe some evidence that would support a claim construction? I don't believe that's appropriate. I believe that Apotex should be held to its burden under the disclaimer doctrine because it's trying to limit the claim terms based on the prosecution history. You're saying there's no clear disclaimer, so you can't look at it. Thomas? I'm saying that the proper analysis is under the disclaimer standard because the cases Apotex cites, Nystrom, GNPE, and Fenner weren't this type of case. They're a different type of case than Ecolab and MIT where there's a distinction between what's in the specification and the prosecution history. In other words, the prosecution history, the applicants argued for something narrower than what they said their invention was in the specification. That's the fact pattern in Ecolab. What about Phillips, which says that we can consider the prosecution history as part of the intrinsic record when determining claim construction? Phillips says that, but Phillips also very clearly, quoting Vitronics, says the purpose of which is to see if there's a disclaimer. Not a disclaimer, but a definition. It might be... So your point is that the only way that the prosecution history can relate to claim construction is if there's a disclaimer, just to make sure we understand your position. In this type of case with this type of fact pattern, like in Ecolab and MIT where there's a difference between what the applicants said in the prosecution history and the specification, there's another line of cases which Aptek cited in its briefs, the Nystrom, Fenner, and GMP cases where the court found there's a specific agreement between what the applicants said in the prosecution history and what they said in the specifications. In those cases, especially in Nystrom, the court expressly found that in those circumstances, you don't need a disclaimer. But interestingly, in Nystrom at page 1048, on another claim term, the district court said the disclaimer standard was appropriate. But again, the court said in the first claim term it wasn't a disclaimer case in Nystrom because the applicant described their invention the exact same way in the specification and in the prosecution history. Again, in contrast to the other line of cases, Ecolab, MIT, in this case, where the applicants described their invention and the specification more broadly than how they characterized it during the prosecution history. Your argument does require us to agree with your understanding of how the specification should be read. Right. One point, if I may, that I'd really like to make because I think it's really important to a lot of arguments that are being made here. In our red brief at pages 47 to 48, we made an argument about column 6 in the specification, which is Appendix 36, lines 23 to 33, which that paragraph starts in certain embodiments and it describes what's called a rate-controlling polymer being combined with the drug to form granulates. In Apotex's product, they use the exact same language, a rate-controlling polymer combined with a drug to form granulates. What's described in column 6 is exactly the type of granulates that Apotex makes. They combine the rate-controlling polymer, which everybody agreed at trial is what causes the extended relief, with the drug into granulates. Apotex tells you this in its brief at page 10 and then those granulates are compressed into mini tablets. Then you go to column 7 in Appendix 37, lines 15 to 20. Can you point me exactly what lines you're looking at in column 6? Right. Yes, it's Appendix 36. I'm sorry if I spoke too fast. It was column 6, lines 23 to 33. That, in our view, is express disclosure, again, of combining a rate-controlling polymer with the active drug to form granulates, which is exactly the way that Apotex makes its product. We made this point in the red brief. Can I ask you, though? It talks about how that is your extruded, spherinized core, but that's the core then that's surrounded by a coating, right? No, I don't agree with that because you're forming granulates, just like Apotex does, of the rate-controlling polymer. As everyone agreed at trial, the experts agreed, that is what causes the extended release. You don't put another extended-release coating. You could put another coating. Where does it say that, though, in the specification, that you don't put an extended-release coating on that? Because I hear what you're saying. I understand that in the matrix formulation, there's already something that's going to provide for the extended release, but I suppose it wouldn't be crazy to put a coating on as well, and then you have even more extended release. I don't see where in the patent it says clearly whether this core, made this way, has a coating on it or not. Well, there's many embodiments described and the specification talks about putting coatings on cores that do have, that are already extended-release. There's a number of possibilities, in other words. I don't think the specification precludes someone from putting extended-release coating on those types of granulates that are formed, but on the other hand, the specification certainly doesn't say that you must or indicate in any way specifically that in that embodiment that's described in that paragraph, that a membrane coating is added to that formulation after the granulates are formed. And I think the evidence supporting that is in column 7, appendix 37 at 15 to 20, where it says the invention can be implemented using the granulates. I guess I just had one more question. I wanted to ask you about a particular language that it talks about, it's in column 5, and it says those skilled in the art will be able to select an appropriate amount of drug for coating onto or incorporating into the core. Is that language, the amount of drug coating onto, is that referring to where there's a drug core of the non-matrix type? And then the language that it talks about incorporating into the core, is that for the type of matrix drug or spherinized core? Right. If you look at column 5, in that language it's talking about another type of formulation where you have these film-form membranes, but in column 6 you're talking about a different type of embodiment, as the language says. It says in accordance with certain embodiments in that paragraph in column 6, lines 23 to 33. Does that suggest then that the spherinized core is not coated? Yes, I don't think it suggests either way whether it's coated or not, but the point is that it's describing a formulation that combines the rate-controlling polymer with the drug to form the granules. And that's exactly what Apitex does. Whether you coat that later or not, as I see it, I don't think the specification indicates that you must or you can't either way. But again, what it's showing is that the type of formulation that Apitex uses, these granulates that are combined, a combination of what Apitex calls the rate-controlling polymer and what the specification also calls the rate-controlling polymer with the drug are formed. Thank you, Your Honor. I'll be brief. I have two points. The first one is, counsel pointed to column 6 and then to column 7 for this polymer mixed with active and that that can be the invention. They specifically rely in their brief at column 7 lines 15 through 20 which says you can use different multi-particulates i.e. pellets, beads, granules or mini-tabs. And they say that's what Apitex is doing. But if you look in that same column 7, lines 4 through 14 it tells you in general it is desirable to prime the surface of the particle before applying an extended release membrane coating. And then it tells you at line 11 the membrane coatings can be applied to the core using any coating techniques commonly used in the industry. When you read columns 6 and 7 in their entirety then and put this all together, what they're telling you is this core can be a pellet a bead, a granule, a mini-tab and then you coat it. The claim expressly requires an extended release coating comprising a membrane. They didn't claim any systems that don't use a coating. Their patent doesn't describe any extended release systems that don't have a membrane coating. Except in column 3, I'm sorry, in column 1. The only discussion of a matrix in this patent is column 1 line 57 where they're talking about combining drug and polymer to make a matrix and they're distinguishing the prior art. It's clear that a matrix is a different type of system than the extended release membrane coatings that these inventors used. Now the other thing I want to discuss just briefly is the issue of covering and that somehow this broadens the claim to get rid of membrane and suddenly you can have things that aren't coated, they're just matrices. There was a disagreement about the construction of membrane coating. The parties proposed different definitions but the claim says it's a water-insoluble polymer membrane surrounding the core. Leaving aside the word membrane, it's made of polymer, it surrounds this core and it's part of the coating. That's what the coating comprises. I've thought about what other words you could use for membrane. It's a covering or film. We weren't suddenly saying you eliminate membrane from this claim and it can cover matrices or any other type of extended release system. It was simply a way to try to provide meaning but clearly the extended release coating has to be a membrane. Are there any other questions? No, thank you very much. Thank you.